IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CRYSTAL V. L. RIVERS, )
)
    Plaintiff, )
)
v. ) Case No. 6:18-cv-00061
)
UNITED STATES OF AMERICA, et al., )
)
    Defendants. )

## BRIEF IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANT MARK LOFTIS

### PRELIMINARY STATEMENT

In adding attorney Mark Loftis ("Mr. Loftis") as a defendant in this action, the plaintiff, Crystal V. L. Rivers ("Rivers"), has continued her campaign of adding every lawyer who has represented an individual or entity that has taken any action that she believes has somehow "wronged" her.[1]

Rivers' has no valid or viable claim against Mr. Loftis. Although she labels the Count against Mr. Loftis as a claim for "fraudulent conveyance," Rivers has no claim under Virginia's fraudulent conveyance statute (Virginia Code § 55-80), because that statute does not permit recovery of money damages (which is the relief Rivers' seeks in this action) and, in any event, there is no allegation that Mr. Loftis ever took title to any real property. Rivers likewise has no

---

[1] Rivers' "cut-and-paste" approach to adding defendants is exemplified by the fact that she has incorrectly alleged that Mr. Loftis works from "offices located at 1 Cedar Hill Ct., Bedford VA 24523." (Second Amended Complaint, ¶ 49.) This is, in fact, the office address of defendant Steve Grant, an attorney who has represented Shana Beck Lester in numerous matters adverse to Rivers, and who is identified in the preceding paragraph of Rivers' pleading. Mr. Loftis is a Principal in the Roanoke Office of Woods Rogers PLC located at 10 South Jefferson Street, Suite 1400, Roanoke, Virginia, 24011, and serves as head of the firm's Litigation Section.

Woods Rogers PLC
Attorneys at Law

valid fraud claim against Mr. Loftis because there is no allegation that Mr. Loftis made any false representation to Rivers and upon which Rivers relied to her detriment.

Rivers has also failed to allege any facts that would support a claim for fraud. Rather, once stripped of the conclusory allegations and buzzwords, Rivers' Second Amended Complaint alleges nothing more than that Mr. Loftis provided ***truthful and accurate*** information to a potential purchaser of property showing that prior claims brought by Rivers had been dismissed, and that he did so to further the efforts of his clients (defendant Ralph Beck and his companies) to convey those properties. Because neither the "Option Agreement" that Rivers (erroneously) claims to have rights under, nor the *lis pendens* that she filed, precludes the transfer of property, Mr. Loftis cannot have any liability to Rivers, on any theory, for providing accurate and truthful information so that a prospective purchaser can make its own judgment about whether to proceed with the purchase of the property.

## ARGUMENT & AUTHORITIES

### I. THE SECOND AMENDED COMPLAINT FAILS TO STATE ANY VIABLE CLAIM AGAINST MR. LOFTIS.

Rivers' Second Amended Complaint fails to state any viable claim against Mr. Loftis. Her effort to spin the routine sale of property into some "fraud" or "conspiracy" claim is fundamentally flawed, both because the parties and representatives involved in that conveyance of property owed no ***tort*** duties to Rivers, and because Rivers' bases her claim on the mistaken belief and assertion that her claims, demands and *lis pendens* filings somehow create a "lien" that precludes transfer of properties. Rivers also fails to allege facts (as opposed to mere buzzwords and conclusions) to support any claim of "fraud" against Mr. Loftis, and in fact the allegations establish nothing more than that Mr. Loftis provided truthful information to the

Woods Rogers PLC
Attorneys at Law

potential buyer regarding the dismissal of Rivers' prior claims – an act for which there can be no liability.

### 1. Even if Rivers' "Option Agreement" were Valid (Which it is Not), Any Violation Is Nothing More Than a Breach of Contract.

The crux of Rivers' claims is that she has some legally enforceable right under an "Option to Purchase and First Right of Refusal Agreement" (the "Option Agreement") which she executed with defendant Shana Lester on April 17, 2007. Rivers repeatedly alleges that the property had not been "released" from the Option Agreement (and/or from her *lis pendens* filings) and therefore, purportedly, could not be conveyed to anyone but her.[2]

Virginia law has rejected the "more or less inevitable efforts of lawyers to turn every breach of contract into a tort." *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983) (quoting W. Prosser, HANDBOOK OF THE LAW OF TORTS § 92 (4th Ed. 1971), p. 614). Rivers does not identify any right that was violated other than the rights she (erroneously) claims to have under the "Option Agreement," nor does she identify any common law duty that Mr. Loftis could have possibly owed to her.[3] Any claim that real property was conveyed in violation of the "Option Agreement" states nothing more than a claim of breach of contract, and cannot constitute "fraud." *Dunn Const. Co. v. Cloney*, 278 Va. 260, 268 (2009) ("Dunn's false representation that he had made adequate repairs thus related to a duty that arose under the contract. The fact that the representation was made in order to obtain payment from Cloney does not take the fraud outside of the contract relationship, because the payment obtained was also due under the

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[2] *E.g.*, Second Amended Complaint, ¶¶ 295, 297, 298, 303, 309, 324, 342, 343, 349, 350, 351, 363- 78.
[3] Rivers confirms this in Paragraph 316 of the Second Amended Complaint, in which she alleges that defendants Beck, B-Boys LLC (which she incorrectly refers to a "BBoyz LLC") and Lester "refuse to perform on the contract with Rivers."

*{2632083-1, 900000-00960-01}* 3

original terms of the contract."). This is true regardless of the motives underlying the breach. *Kamlar Corp.*, 224 Va.at 707.

### 2. Rivers' *Lis Pendens* Does Not Preclude the Conveyance of the Real Property and Cannot Give Rise to Any "Fraud" Claim.

To the extent Rivers' claims are based on the fact that properties have been transferred in the face of the *lis pendens* that she filed, her claims fare no better. A memorandum of *lis pendens* does not preclude transfer of the affected property, but rather serves only to provide constructive notice to any prospective purchaser of the property that the purchaser takes the property subject to a potential valid judgment. *Wells Fargo Funding v. Gold*, 432 B.R. 216, 221–22 (Bankr. E.D. Va. 2009). As the Supreme Court of Virginia has explained, "A *lis pendens* is not a seizure. It is restrictive only and but serves to warn others that rights which they may acquire will be subject to any valid judgment entered." *Bray v. Landergren*, 161 Va. 699, 713 (Va. 1934). Moreover, Rivers' *lis pendens* is invalid on its face. Virginia Code § 8.01-268(B) expressly provides that "No memorandum of lis pendens shall be filed unless the action on which the lis pendens is based seeks to establish an interest by the filing party in the real property described in the memorandum." (Emphasis added.) Rivers, however, seeks money damages. "The statute is not applicable. . . to an action to recover a personal judgment against the defendant." *Preston's Drive Inn Restaurant, Inc. v. Convery*, 207 Va. 1013, 1016 (1967).

### 3. Rivers Fails to Allege Facts to Support Any Claim of Fraudulent Conveyance.

The only claim against Mr. Loftis appears to be Count Twelve, which is labeled as "Fraudulent Conveyance." It is not clear whether Rivers is in fact alleging a fraudulent conveyance in violation of Virginia Code § 55-80, or whether she is in fact attempting to state a

WOODS ROGERS PLC
ATTORNEYS AT LAW

claim for common law fraud. In either event, Rivers has failed to allege sufficient facts to support any claim of fraud.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And in determining whether a plaintiff has stated a plausible claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Id.* To state a valid cause of action "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A *pro se* plaintiff such as Rivers is entitled to "the benefit of a liberally construed complaint," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), that "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, she is still required to adhere to basic procedural rules and pleading standards. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.").[4]

### A. Rivers Has Failed to State a Claim Under Virginia Code § 55-80.

To the extent Rivers is attempting to state a claim under Virginia's fraudulent conveyance statute, her claim fails. As the Supreme Court of Virginia has explained:

> Code § 55-80, however, does not impose liability upon the participants of a fraudulent conveyance. The statute merely "renders void every conveyance or transfer made 'with intent to delay, hinder or defraud creditors . . . of or from what they are or may be lawfully entitled.'" *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 830, 4 Va. Law

---

[4] The Court has already ***twice*** admonished Rivers that "even though she is *pro se*, she is bound by all applicable rules in pursuing this case, including Federal Rule of Civil Procedure 11." (Dkt. No. 15 at 10.)

WOODS ROGERS PLC
ATTORNEYS AT LAW

> Rep. 805 (1987) (quoting Code § 55-80). This remedy returns the
> fraudulently conveyed assets to the transferor, but, as a general
> rule, it does not authorize "a court to award *an in personam*
> judgment when [the transaction] is set aside." *Mills v. Miller
> Harness Co.*, 229 Va. 155, 158, 326 S.E.2d 665, 667 (1985).

*La Bella Dona Skin Care, Inc. v. Belle Femme Enters.*, LLC, 294 Va. 243, 256 (2017). Here, Rivers seeks money damages; she make no request to set aside the alleged fraudulent conveyance[s] and, in any event, she does not allege that Mr. Loftis took title to any real property so she cannot seek to set aside any alleged fraudulent conveyance as to him. Even aside from all of the other deficiencies in her pleading (which are detailed below), Rivers cannot possibly be entitled to any relief under Virginia Code § 55-80.

### B. Rivers Fails to Plead Facts to Support Any Claim of Actual Fraud.

Under Virginia law, "The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Winn v. Aleda Const. Co.*, 227 Va. 304, 308 (1984).

#### 1. Rivers Fails to Identify Any Allegedly False Statement that She Herself Relied On.

Any claim by Rivers against Mr. Loftis for alleged fraud fails for the simple reason that Rivers nowhere alleges that Mr. Loftis made any allegedly false statement that she relied upon to her detriment. Chief Judge Urbanski recently pointed to this exact failure in denying a plaintiff leave to file an amended complaint adding a claim of fraud. Examining the proposed amended complaint in that case, Judge Urbanski noted that:

> Kinnett identifies a series of allegedly false statements that
> Sotera employees made to OFCCP during the investigation of his
> discrimination charge but did not identify any false statements that
> he himself relied upon to his detriment. See ECF No. 31-2, at 14-

WOODS ROGERS PLC
ATTORNEYS AT LAW

> 15. Thus his first proposed amendment fails to state a claim of actual fraud.

*Kinnett v. Key W + Sotera Def. Sols.*, No. 5:18-CV-110, 2019 WL 4018347, at *8 (W.D. Va. Aug. 26, 2019).

The same is true here. Rivers has no fraud claim against Mr. Loftis, because she fails to identify any allegedly false representation which he made to Rivers, and that Rivers then relied upon to her detriment.

### 2. Rivers Fails to Allege Fraud with Particularity as Required by Rule 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To satisfy this particularity standard, Rivers must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir.2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999)), *rev'd sub nom. on other grounds, Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).

Rivers' Second Amended Complaint wholly fails to state any actual facts to support the claim of fraud. She merely alleges, in conclusory fashion, that Mr. Loftis (and others) "knowingly and intentionally mislead real estate agents, closing agents, buyers, and insurance agents that the Option and First Right of Refusal…wasn't valid"[5]; that Mr. Loftis supposedly "provided incorrect release information" and "orchestrated the sale of the property intentionally going around the cloud on the property"[6]; and that Mr. Loftis supposedly "sent a release" to the

---

[5] Second Amended Complaint, ¶ 314.
[6] Second Amended Complaint, ¶ 378.

Woods Rogers PLC
ATTORNEYS AT LAW

attorney for a purchaser.[7] She also includes a mangled and contradictory allegation that Mr. Loftis (and others) "intentionally, for the sole purpose of getting paid and allowing Beck, Lester, and S&R to fraudulently convey the property and make a large profit from the use of Rivers contract and sales of the property."[8] These conclusory allegations fail to identify "the time, place, and contents" of the supposed false representations or how they were supposedly accomplished.

Ironically, the one set of *actual* facts that Rivers' pleads as to Mr. Loftis flatly contradicts any claim of fraud. Rivers alleges that. "Loftis admitted in an email that he provided Patel with prior litigation cases that had been dismissed between Beck and [Rivers'] former company, CVLR Inc … and cases that had been dismissed."[9] Nowhere is it alleged that any of the information Mr. Loftis ***actually provided*** was false or incorrect. So Rivers appears to be alleging that Mr. Loftis somehow committed a fraud by providing accurate, truthful information. Any such claim fails to state a viable cause of action under Virginia law. *E.g., Norris v. Mitchell*, 255 Va. 235, 240 (1998) ("The purchasers recognize that one of the essential elements of their cause of action for fraud is 'a false representation.'").[10]

Rivers' Complaint also fails the *Twombly/Iqbal* plausibility test. This is particularly true given that Virginia law requires *justifiable reliance* on any alleged false representation. *Sweely Holdings, LLC v. Suntrust Bank*, 296 Va. 367, 382-83 (2018). Rivers' nowhere alleges that Mr. Loftis ever represented that he represented Rivers, and the allegations in fact make clear that Mr.

---

[7] Second Amended Complaint, ¶ 381.
[8] Second Amended Complaint, ¶ 393.
[9] Second Amended Complaint, ¶ 450.
[10] Rivers, likewise, cannot claim any fraudulent omission. Even though she alleges that Mr. Loftis purportedly "failed to provide [the prospective purchaser] with the Federal litigation" (Second Amended Complaint, ¶ 381), she filed a *lis pendens* referring to the Federal litigation and the Federal litigation is a matter of public record equally available to the prospective purchaser. Thus, any claim of fraud by omission necessarily fails. *E.g., Horner v. Ahern*, 207 Va. 860, 863-64 (1967) (no viable fraud claim where "the means of knowledge are at hand and equally available to both parties").

Woods Rogers PLC
Attorneys at Law

Loftis at all times represented defendant Ralph Beck and his companies as the sellers of real property. Thus, there is no plausible means by which Mr. Loftis could have "released" Rivers' *lis pendens,* nor it is plausible that any alleged purchaser could have justifiably relied on any such alleged "release." "Absent such reasonable or 'justifiable reliance,' no fraud is established." *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 246 (2012) (citation omitted).

At bottom, Rivers' is upset that Mr. Loftis has represented and advised defendant Ralph Beck and his companies regarding the sale of property which she (erroneously) believes is in violation of the Option Agreement and/or Rivers' *lis pendens*. Rivers has no viable fraud claim based on Mr. Loftis' representation of his clients and his delivery of truthful information to potential purchaser of the clients' property.

### C. Mr. Loftis Can Have No Liability For Advising His Clients Regarding the Sale of Property, Even if Rivers Claims That Property is Subject to the Option Agreement.

As noted above, the only ***actual facts*** alleged by Rivers show that Mr. Loftis did nothing more than provide truthful information to the prospective purchaser about the dismissal of Rivers' prior cases and claims, so that the prospective purchaser could make its own determination about whether to proceed.

The RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS states, in § 57(c), that:

> A lawyer who advises or assists a client to make or break a contract, to enter or dissolve a legal relationship, or to enter or not enter a contractual relation, is not liable to a nonclient for interference with contract or with prospective contractual relations or with a legal relationship, if the lawyer acts to advance the client's objectives without using wrongful means.

The Comments to this Section make clear that, "[A]a lawyer may ordinarily, without civil liability, advise a client not to enter a contract or to breach an existing contract" and that the lawyer "may also assist such a breach, for example by sending a letter stating the client's

intention not to perform, or by negotiating and drafting a contract, with someone else that is inconsistent with the client's other contractual obligations." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 57, cmt. g. Rivers' allegations that Mr. Loftis acted to receive legal fees from his clients does not change this result. "So long as the lawyer acts or advises with the purpose of promoting the client's welfare, it is immaterial that the lawyer hopes that the action will increase the lawyer's fees or reputation as a lawyer or takes satisfaction in the consequences to a nonclient." *Id.*

At bottom, Rivers' is seeking to sue Mr. Loftis for providing accurate and truthful information that assisted Mr. Loftis' client in conveying property that Rivers (wrongly) claims should have been conveyed to her. Even if Rivers' allegations are true, that amounts to nothing more than breach of contract – not fraud – and Mr. Loftis can have no liability to Rivers for acting as the seller's attorney.

## CONCLUSION

For all the foregoing reasons, Rivers' claims against Mr. Loftis should be dismissed with prejudice.

Respectfully submitted,

MARK LOFTIS


By: /s/ - Erin B. Ashwell
      Of Counsel

Erin B. Ashwell, Esq. (VSB No. 79538)
eashwell@woodsrogers.com
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1400
10 South Jefferson Street
P.O. Box 14125
Roanoke, Virginia 24038-4125
Telephone: (540) 983-7600/ Facsimile: (540) 983-7711
    *Counsel for Defendant Mark Loftis*

## **CERTIFICATE OF SERVICE**

I certify that on September 24, 2019 a copy of the foregoing was served on counsel of record via the CM/ECF system and that on September 25, 2019, a copy was served via United States mail on Crystal Rivers at P.O. Box 1182, Forest, VA 24551.

/s/ - Erin B. Ashwell

Woods Rogers PLC
ATTORNEYS AT LAW