CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/9/2021

JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CRYSTAL VL RIVERS,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Civil Action No. 6:18-cv-00061
                                      )
GARY M. BOWMAN, *et al.*,             )        By: Elizabeth K. Dillon
                                      )            United States District Judge
        Defendants.                   )

**MEMORANDUM OPINION**

Before the court are the following motions, all filed by the plaintiff, Crystal VL Rivers:

(1) motion to reconsider and request for scheduling order (Dkt. No. 479); (2) motion to file

enlargement of pages, motion for partial summary judgment, motion to have plaintiff's facts

accepted because of the government's failure to contest any of the facts (Dkt. No. 482); (3)

motion to reconsider judge's order at Docket No. 373 (Dkt. No. 483); (4) motion for leave to file

third amended complaint and motion to reconsider order at Docket No. 428 (Dkt. No. 485); (5)

objections and motion to reconsider order at Docket No. 520; (Dkt. No. 521); (6) objections to

the court's order at Docket No. 532, motion for reconsideration and motion for leave to request

setting aside or vacating enjoining order at Docket No. 520 (Dkt. No. 537); and (7) motion for

clarification of the court's order at Docket No. 532 and for extension of time to file supplemental

motion for leave to file and supplement third amended complaint (Dkt. No. 538).

For the reasons stated below, all of these motions will be denied.

I.   BACKGROUND

The court has set forth the factual and procedural background of this matter on several

occasions.   The court will not repeat the exercise here.   Interested readers are referred to the

following docket entries for further background: Dkt. Nos. 498, 519, and 520 (order to show cause, memorandum opinion, and injunction against further filings); Dkt. No. 506 (memorandum opinion and order denying motion for Rule 11 sanctions); Dkt. No. 497 (report and recommendation addressing several motions to dismiss); and Dkt. No. 346 (report and recommendation addressing motion for leave to amend).

## II.   ANALYSIS

### A.   Motion to Reconsider and Request for Scheduling Order (10/8/20 Mot. to Reconsider) (Dkt. No. 479)

Rivers moves to reconsider the court's order dated September 28, 2020.   (Dkt. Nos. 477, 478.)   In this order, the court adopted Judge Hoppe's August 18, 2020 Report and Recommendation (8/18/20 R&R) (Dkt. No. 469) and denied Rivers' motion for a scheduling order.   The 8/18/20 R&R recommended granting the federal defendants' motions to substitute and to dismiss (the federal defendants are the United States of America, the Federal Bureau of Investigation, the Internal Revenue Service Criminal Division, IRS Agent Karen Deer, and IRS Agent Marylou Prilliman); dismissal of Rivers' claims under the Federal Tort Claims Act (FTCA) without prejudice; denying various ancillary motions filed by Rivers as moot; and dismissal of Rivers' potential *Bivens* claims against defendants Deer and Prilliman with prejudice.   (8/18/20 R&R 19; 9/28/20 Order, Dkt. No. 478.)

Rivers' motion to reconsider is governed by Federal Rule of Civil Procedure 54(b), which provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment.   Motions for reconsideration of interlocutory orders—meaning non-final orders issued during the course of litigation—"are not subject to the strict standards applicable to motions for reconsideration of a final judgment" *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).   Compared to

motions to reconsider final judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, "Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).   The court's discretion under Rule 54(b), however, is "not limitless." *Id.*   Courts have "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." *Id.* (collecting cases).   The law-of-the-case doctrine provides that in the interest of finality, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).   Grounds for Rule 54(b) reconsideration include: (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice. *Wooten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016).   Such motions are "not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Id.*   The motion is inappropriate where it "merely reiterates previous arguments." *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F. Supp. 2d 738, 744 (W.D. Va. 2011).

Rivers' arguments largely mirror the arguments that were addressed first by Judge Hoppe when he issued his 8/18/20 R&R, and second by the court when it addressed Rivers' objections thereto. *See, e.g.*, 9/28/20 Order 5–6 ("Because there is no 'clearly established constitutional right to have claims of criminal activity by a private actor investigated,' defendants Deer and Prilliman are entitled to qualified immunity.") (quoting 8/18/20 R&R 18–19); 10/8/20 Mot. to Reconsider at 15 (arguing that there are "limited circumstances under which the Government

may have a duty to protect individuals from the wrongful acts of third parties").   Rivers has not provided new arguments or evidence for the court to consider.   Nor has the court misapprehended her position or the facts or the applicable law.   Thus, the court will not revise its order pursuant to Rule 54(b).

Rivers also requests, in the caption of her motion, that the court issue a scheduling order. This request appears to relate to Rivers' repeated entreaties for the court to allow "limited discovery."

> Plaintiff respectfully moves the Court . . . to reconsider its ruling, not dismiss the portions of this action that relates to the Plaintiff's rights under the [Crime Victims Rights Act] and under *Bivens*, and allow the Plaintiff's discovery requests limited only to those two claims to proceed, so that the Plaintiff can show that these Government employees, with the encouragement and aid of the putative defendants in what was a viable criminal investigation, willfully and intentionally violated this Plaintiff's and other similarly situated victim's rights.

(10/8/20 Mot. to Reconsider 17.)   The court's 9/28/20 order explained why the court has refrained from issuing a scheduling order and triggering the commencement of discovery.   "The court, in its discretion, has not conducted a scheduling conference because of the several motions that have been pending since the outset of this matter, the resolution of which *do not require discovery*.   Under Rule 16(b)(2), the court finds that there is and has been good cause to delay issuance of a scheduling order until the scope of the pleadings in ths matter has been resolved." (9/28/20 Order 17 (emphasis added).)   Given the decisions contained in this opinion, there is no need to issue a scheduling order.

For these reasons, Rivers' 10/8/20 motion to reconsider will be denied.

4

**B.  Supplemented Motion to File Enlargement of Pages, Motion for Partial Summary Judgment, Motion to Have Plaintiff's Facts Accepted Because of the Government's Failure to Contest Any of the Facts, Plaintiff's Memorandum in Opposition to the Government's Memorandum of Law (10/19/20 Mot. to File Enlargement) (Dkt. No. 482)**

In this 47-page motion with 246 pages of exhibits attached, plaintiff moves for summary judgment on the issue of whether her rights under the Crime Victims' Rights Act (CVRA) were violated.   (Dkt. No. 482 at 12–44.)   The court has already held that Rivers is not entitled to relief under the CVRA.   (*See* Mem. Op. & Order Adopting 3/9/20 R&R, Dkt. Nos. 380, 381; Mem. Op. & Order Denying Mots. to Reconsider, Dkt. Nos. 428.)   Plaintiff also requests limited discovery "in aid to enforce the CVRA."   (Dkt. No. 482 at 45.)   Again, the court has exercised its discretion to delay the commencement of discovery, and plaintiff is not entitled to relief under the CVRA in any event.   Therefore, this motion will be denied.

**C.  Motion to Reconsider Dkt. No. 373 (10/19/20 Mot. to Reconsider) (Dkt. No. 483)**

Rivers moves to reconsider the court's order dated March 24, 2020.   (Dkt. Nos. 372, 373.)   In this order, the court overruled Rivers' objections to Judge Hoppe's 2/26/20 R&R, accepted the R&R in part, and modified the R&R in part, as follows:

> 3.   Counts 8 and 10 of the Second Amended Complaint are DISMISSED WITH PREJUDICE;
>
> 4.   Defendants' motions to dismiss (Dkt. Nos. 43, 50, 61, 68) are GRANTED;
>
> 5.   Defendant Frank Morrison's motion for a more definite statement (Dkt. No. 67) is DENIED as moot;
>
> 6.   Rivers' motion to amend with regard to defendant Sherwood Day (Dkt. No. 128) is DENIED WITH PREJUDICE;
>
> 7.   Rivers' motion to amend with regard to defendant Peter Sackett (Dkt. No. 222) is DENIED WITHOUT PREJUDICE;
>
> 8.   The claims against Frank Morrison, Robert Chapman, and

Sherwood Day are DISMISSED WITH PREJUDICE; and

9.   The claims against Bank of the James, Peter Sackett, and Sherri
Sackett are DISMISSED WITHOUT PREJUDICE.

(Dkt. No. 373.)

First, Rivers argues that her claims against defendants Morrison, Chapman, and Day should
have been dismissed without prejudice.   (Dkt. No. 483 at 4–8, 10–11.)   Rivers cites the court's
rationale in deciding not to adopt the R&R's recommendation that her claims against Bank of the
James, Peter Sackett, and Sherri Sackett be dismissed with prejudice, changing the dismissal to
being without prejudice.   (Dkt. No. 372 at 5–6.)   Rivers does not offer any reason for the court
to reconsider its rationale for dismissing her claims against Morrison, Chapman, and Day with
prejudice—Rivers' repeated failures to name defendants in any specific count.   (*See id.* at 5
(explaining that "when the court granted leave to file a second amended complaint, the court
instructed Rivers that 'unlike her amended complaint, each separate count or claim in her second
amended complaint shall identify clearly which defendants are being named in that particular
account'") (quoting Dkt. No. 15).)   Rivers "did not heed the court's warning" with respect to these
defendants.   (*Id.*)

Second, Rivers objects to the court's dismissal of her RICO claim, count 8, from her second
amended complaint.   (Dkt. No. 483 at 8–11.)   This claim was also dismissed for failure to name
the specific defendants against whom Rivers was asserting these claims.   (Dkt. No. 372 at 4–5.)
Rivers refers to this as a "clerical error" that should be overlooked.   The court has flatly rejected
this argument before and does so again.   "The court is entirely justified in expecting litigants, even
pro se litigants, to follow basic pleading rules and to face the consequences when those rules are
not followed—especially in conjunction with repeated instructions and warnings from the court."
(5/19/20 Mem. Op. & Order 4, Dkt. No. 428 (denying motion to reconsider dismissal of counts 8

and 10).)

For these reasons, Rivers' 10/29/20 motion to reconsider will be denied.

### D. Motion for Leave to File Third Amended Complaint and Motion for Reconsideration (Dkt. No. 485)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy of resolving cases on their merits instead of disposing them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

"Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," and would therefore not survive a motion to dismiss pursuant to Rule 12(b)(6). *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 12(b)(6) is read in conjunction with Rule 8(a)(2), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

Rivers is proceeding pro se, and the court has an obligation to generously construe the pleadings of a self-represented plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "even

pro se litigants must state their claims in an understandable and efficient manner." *Plumhoff v. Cent. Mortgage Co.*, 286 F. Supp. 3d 699, 702 (D. Md. 2017).   "The leeway extended to a pro se plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8." *Adam v. Wells Fargo Bank, N.A.*, JFM-9-cv-2387, 2010 WL 3001160, at *3 (D. Md. July 28, 2010).   "It is not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading that plaintiff filed." *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

Rivers characterizes the proposed amendments as follows:

- Adding new defendants, including the Virginia State Police, Special Agent Robert Mrak, and Special Agent William Talbott.

- Setting forth the overall "now known scope of the case," referencing a "federal investigation."

- Amending the petition for enforcement of the CVRA, reflecting "ongoing violations" committed by the United States Attorney's Office and other "investigative agencies."

- Amending counts one and four, curing "deficiencies related to her Bivens claims."

- Amending counts 6, 7, 9, 11, 13, 14, and 15 by adding and removing certain defendants.

- Amending count 24 to include "new discovery" and facts related to the case.

(Dkt. No. 485 at 2–3.)[1]   Various responses have been filed by defendants named in the proposed third amended complaint.   (*See* Dkt. Nos. 441–47, 460–61, 490–91, 493.)

---

[1] Rivers also notes that "additional defendants" were brought into the third amended complaint in Docket No. 439 (*Id.* at 2 n.3), and that counts 8 and 10 were amended in Docket No. 439 to "cure the deficiencies" brought to plaintiff's attention by the court, (*Id.* at 3.)   This document, Docket No. 439, was deemed superseded by court order.   (*See* Dkt. No. 544.)

The court considers the proposed amendment to be futile.   It repeats many of the errors that led the court to dismiss Rivers' previous complaints, and it either does not, or cannot, cure any of the deficiencies that led to dismissal.   For example, the court adopted the analysis in the Judge Hoppe's November 10, 2020 R&R (Dkt. No. 497) that many of Rivers' claims are barred by res judicata.   (Dkt. No. 531 at 9.)   Rivers cannot plead herself around this insuperable bar against her claims.   Rivers' pleading also includes a request for relief under the CVRA.   (*See* Proposed Third Am. Compl. ¶¶ 108–140, Dkt. No. 485-1.)   Again, the court has held that Rivers is not entitled to relief under the CVRA.

Beyond futility, the court finds that the defendants would be severely prejudiced if the court were to allow a third amended complaint in this matter.   The parties have already been prejudiced by the need to defend themselves against Rivers' convoluted and innumerable claims. Rivers' proposed third amended complaint is even more lengthy and complicated than the last: at 185 pages and 807 paragraphs, it exceeds the second amended complaint (Dkt. No. 17) by 58 pages and 253 paragraphs.   It names 65 defendants and, inexplicably, nine additional "third party defendants."   (Dkt. No. 485-1.)   The named defendants include the United States of America, the FBI, the Internal Revenue Service, Virginia State Police, Bank of the James, Ted Counts Realty, and Advantage Title and Closing, LLC.   By virtue of its length and general incomprehensibility, it directly contravenes the rule that allegations in a complaint be "simple, concise, and direct."   Fed. R. Civ. P. 8(d)(1).

Consider these allegations from the proposed third amended complaint:

95. The Defendants; while acting within the course and scope of their agency, commission, office or employment by the State of Virginia, and/or Federal and State Agencies of the Defendant United States: (a) knew or should have known that prior to the Rivers complaints and the complaints of other victims, the Defendants continued to commit criminal acts against her and others; (b)knew or should have known they had a duty to investigate Wynne's illegal banking enterprise, prosecute and indict Wynne, his illegal banking entities and the Defendants and Co-Defendants who conspired, organized and profited from the organized enterprise and the illegal acts and omissions; and other Defendants they investigated and allowed to continue to commit criminal acts; (c) knew or should have known they had a duty to disclose the Defendants criminal activities to law enforcement agencies with jurisdiction over their crimes and/or report these activities; (d) knew or should have known they had a duty to follow and enforce the Attorney General Guidelines regarding the investigation into the illegal banking, money laundering, forgery, insurance and land fraud crimes and (e) knew or should have known that their failure to comply with their duties alleged herein would result in Rivers, her businesses and other victims (to be intervened) suffering irreparable harm[16]

In this representative paragraph, Rivers identifies only one person by name—Wynne (presumably John Wynne, referenced in paragraph 57 of the third amended complaint)—and Wynne is not even a defendant in this action.   Defendants in the first sentence presumably refers to defendants who work for the state or federal government, but it is unclear if plaintiff refers to all of them or only some of them.   After that, the remaining defendants are left to guess if they are being accused of the actions alleged in the paragraph—e.g., defendants and co-defendants who "conspired, organized and profited from the organized enterprise and the illegal acts and

omissions" and "other Defendants they investigated and allowed to continue to commit criminal acts."   This does not give fair notice of Rivers' claims.

The complaint continues:

97. As a result of these wrongful acts and events occurred that a reasonable, prudent person would have foreseen in light of the circumstances set forth herein, including money laundering, illegal banking, forgery, insurance and land fraud.  The tortuous and negligent conduct of such Defendant and employee of Defendant was and continued to be a violation of federal laws and a material element and proximate cause of bringing about Rivers, her business, and other victims (to be intervened) suffering.

Here, Rivers refers to a single defendant, and an employee of that defendant, but the defendants have no way of knowing which defendant is being accused of the conduct outlined in the paragraph.

Eventually, after 140 paragraphs of allegations under various subheadings——Scope of the Case, the Investigation Factual Allegations Relating to Defendants USA (Deer and Prilliman) VSP (Virginia State Police), Mrak, Talbott, Vaughn, Cullen, and Wray; Wrongful and Fraudulent Concealment/Due Diligence Until Discovering Newly Discovered Facts; U.S. Attorney Patrick Hogeboom Agrees to Allow Campbell County to Investigate the Reported Forgery—and a petition for enforcement of the CVRA (¶¶ 108-140), the complaint lists twenty-nine claims for relief, (¶¶ 141–807), spanning more than 650 paragraphs.   Each claim identifies which defendants are being named in that particular count, in accordance with the court's previous guidance.   However, the court has also ordered that Rivers "should not name more than one defendant unless one claim against each additional defendant is transactionally related to the claim against the first defendant or seeks joint and several relief, and involves a common

question of law or fact."   2019 WL 2665049, at *4 (W.D. Va. June 27, 2019) (citing Fed. R.

Civ. P. 20(a)(2)).   By naming so many defendants, Rivers has clearly violated this directive.

For example, Rivers' claims against defendants State Farm and Maggie Callahan, a State Farm

insurance agent, for insurance fraud related to an automobile insurance policy, are not

transactionally related to her claims against the IRS and the federal government.   (*See* Proposed

Third Am. Compl. ¶¶ 601-22.)

　　　Ultimately, the court emphasizes the general incomprehensibility of Rivers' third

amended complaint, which undermines the central purpose of the rules governing pleading in

federal court: to give defendants fair notice of the claims against them and the grounds

supporting the claims.   *See, e.g.*, *Stanard v. Nygren*, 658 F.3d 792, 797–98 (7th Cir. 2011)

("Though length alone is generally insufficient to justify rejecting a complaint, unintelligibility is

certainly a legitimate reason for doing so.").   Consider, for example, the allegations in count

two:

## COUNT TWO: GROSS NEGLIGENCE/MISCONDUCT
## DEFENDANTS – USA VSP, MRAK, TALBOTT, AND VAUGHN

**145.**　　　Rivers incorporates this Count with Count One against the Defendants, and the

　　　facts alleged in the above paragraphs and repeats and recites and states her claims and

　　　facts contained in all previous allegations as if fully set forth in paragraphs herein

146.　　　Among the offenses that the FBI is empowered to investigate are crimes

　　　involving racketeering, 18 U.S.C §1962, et seq., money laundering 18 U.S.C §1956-

　　　1957; obstruction of justice, 18 U.S.C §1501 et seq., aiding and abetting, 2471 18 U.S.C

　　　2; wire and mail fraud 18 U.S.C. §1343; and tampering with a witness, victim or

　　　informant, 18 U.S.C §1512

147.     The FBI has established certain core values that it claims "need to be preserved and defended by the FBI in performing its statutory missions. Those values are;

rigorous obedience to the Constitution of the United States; respect for the dignity of all those we protect; compassion; fairness; and uncompromising personal and institutional integrity

148.     The FBI mission further states; "Respect for the dignity of all whom we protect reminds us to wield law enforcement powers with restraint and to recognize the natural human tendency to be corrupted by power and to become callous in its exercise. Fairness and compassion insure that we treat everyone with the highest regard for the constitution, civil and human rights.  Personal and institutional integrity reinforce each other and are owed to the Nation in exchange for the sacred trust and great authority conferred upon us."

149.     The FBI and the Criminal Division of the IRS are statutorily empowered to protect people and victims like Rivers, her businesses and other victims from being victimized by clandestine criminal organizations, and to investigate those responsible for her loss and suffering.

150.     The FBI is an agency within the meaning of 28 U.S.C §2671 et seq. On
September 20, 2015 Rivers received a letter from Investigator JB Epperson of the
Campbell County Sheriff Office informing her that he had spoken with Det. Dempsey of
the Lynchburg Police Department regarding her complaint of Richardson's forgery of a
Credit Line Deed of Trust and HUD statement. He informed her that both he and
Detective Dempsey consulted with the appropriate federal investigating agency and the
United States Attorney Office for the Western District of Virginia. It had been brought to
their attention that Rivers' matter had been thoroughly investigated by federal
authorities. After discussions with Epperson, Rivers contacted the U.S. Attorney, Pat
Hogeboom (deceased Oct 2017), whom she had met with several times and literally
begged him to allow the investigators to do their job and investigate the forgery she had
found and was able to prove now with new evidence. Campbell County was given

permission to investigate the matter. 28 U.S.C. §2671 defines the term "Federal
agency" as including the executive departments, the judicial and legislative branches,
the military departments, independent establishments of the United States, ....
"Employee of the government includes officers or employees of any federal agency
which would be assigned to the investigation.

151.     Sometime in 2016, Rivers learned from a conversation with Lynchburg
Commonwealth Attorney Michael Doucette, that Eugene Wingfield never filed a report of
her 2010 meeting with him as alleged by Rivers in this complaint. Rivers reached out to
Wingfield, who is now the Clerk of the Lynchburg City Court, and he did remember the
meeting and the conversation but affirmed he did not file a report.

152.     The Defendants failed to control the criminal activities of the parties reported to
them that harmed Rivers.

14

In this claim, Rivers faults "defendants"—presumably the United States, Virginia State Police, and Robert Mrak, William Talbott, and James Vaughn, Special Agent Accountants for the Virginia State Police—for failing to "control the criminal activities of the parties reported to them that harmed Rivers."   (Proposed Third Am. Compl. ¶ 152.)   Even assuming that these defendants can somehow be held liable for failing to prevent or control the criminal activities of others, Rivers' allegations are beyond confusing, as she appears to allege a sprawling conspiracy involving countless individuals, government agencies, and business entities.

57. Between 2007 and present, the FBI failed to conduct, with flexibility, under appropriate standards and procedures, investigations to detect, obtain information about, interrupt, and prevent,  and protect Rivers, her business' and other known victims and unknown victims, against federal crimes being committed and those crimes to be committed in the future, by John L "Wynne", Rivermont Banking Company Inc. "RBC", Rivermont Consultants Inc, 1650 Partners LLC "1650", Southgate Leigh Wynne Testamentary Trust "SGLWT", and the federal crimes committed by the co-conspirators, Defendants named in this complaint[9]

Thus, Rivers has alleged that the defendants specified in count two should be liable for failing to prevent federal crimes committed by John Wynne, Rivermont Banking Company, Rivermont Consultants, 1650 Partners LLC, Southgate Leigh Wynne Testamentary Trust, and *all the defendants named in this action*.   The inscrutable nature of such a vast conspiracy is evident in Rivers' allegations.   Some examples are reproduced below.

61. Between December 18, 2010 and January 7, 2011; Rivers met with the City of

Lynchburg Investigator Eugene Wingfield (now Clerk of the Court for City of Lynchburg)

and reported her concerns she had about Wynne, RBC and 1650. Rivers was told that;

"That Wynne was a "washer" and they have been trying to get him for a while but 'they' can't catch him because he stays right under the radar. There wasn't a Judge or Attorney in the State that would take her case. The only way to get Wynne would be to file a case in Federal Court."

62. Rivers provided Wingfield with her documents for review at the meeting and he changed

his mind about her case. Wingfield sent Rivers to the office of the FBI agent Christine

PettyJohn in the City of Lynchburg. Agent PettyJohn provided Rivers with a business

card for Special Agent MaryLou Prillaman of the Department of Justice IRS Division.

Rivers and victim Karen Foster made arrangements and met with Special Agent,

Defendant Prillaman and provided the Department of Justice IRS Division with the same

box of evidence Rivers provided to Bedford County Commonwealth Attorney Mark

Robinette and Wingfield to be used to indict Wynne and those involved in obtaining their

money under false pretense, the insurance fraud and illegal banking activity. Both

women signed papers agreeing that they left their documents and evidence with

Prillaman to copy and review. At all times relevant to this matter, Rivers and other

victims were told Wynne was being indicted

16

66. On February 1, 2011; Rivers was interviewed by Virginia State Police Special Agent James Vaughn regarding her reports to the City of Lynchburg Commonwealth Attorney's investigator Eugene Wingfield, the FBI, and the Bedford County Commonwealth Attorney Mark Robinette about mortgage and insurance fraud and acts committed against her and others by Wynne. Rivers report included what she knew at the time. Rivers had borrowed large sums of money from RBC and RBC had agreed to finance, among other things, $76,000.00 for a F650, purchased by Rivers in May 2007 from Battlefield Ford and insured with State Farm, $38,000.00 for a 5 Horse Sundowner Horse Trailer on ; over $43,000.00 for John Deere tractor and hay equipment, a $475,000.00 commercial loan, $25,000.00 start-up loan, and $25,000.00 deposits for a commercial contract to purchase a riding center property mortgaged through ODNB by Credit Line Deed of Trust dated November 20,2007.

77. The USA has obtained the documents Rivers has provided to all law enforcement and agencies, to demonstrate insurance fraud by Wynne and RBC and what she thought was mortgage fraud to the USA. Rivers documents and documents subpoenaed and obtained by the Virginia State Police for Multi-Jurisdictional Grand Jury were appended for inclusion into the case file #10-86-02-1050-11.

A. Insurance claim document dated 2.24.08 listing charges submitted to repair buildings damaged on Rivers farm. Adjuster Jane G Harold, AIC, Robinson & Assoc. Inc, Lynchburg Virginia, found replacement costs to total $34,143.11. Depreciation reduced costs to an Actual Cash Value of $24,265.38

B. Document dated 9/8/08 from American Bankers Insurance Company of Florida signed by Patrick Rose, Property Claims Supervisor added $8881.35 to the claim for a total of $33,146.73

C. Document dated 1/13/09 from Joseph Sanzone, former attorney for Rivers and CVLR Inc, indicating how the $8881.35 from the insurance company check was to be allocated

80. Sometime between May and June, 2015 Rivers obtained "new evidence" subpoenaed, from Richardson of ATC, relating to the S&R property. Rivers contacted the Lynchburg Commonwealth Attorney who referred her to the Lynchburg Police Department. Rivers met with an investigator from the Police Department. The matter was referred to Campbell County Sheriff Department. ATC, Richardson and Fariss had been withholding evidence from Rivers since 2007. In the response of more than 500 pages, Rivers found a notarized Credit Line Deed as it was prepared originally with the spot for Rivers name blank and also an altered/forged copy of the Credit Line (Mortgage) dated November 20, 2007 that Richardson altered while at the Bedford County Courthouse, adding John L Wynne name in the blank space, in addition to 1650 Partners LLC, instead of Crystal VL Rivers and/or CVLR Performance Horses. [15]

94. On February 10, 2020; Rivers learned that a 2007 Mercedes Benz was registered to her company, Serene Creek Run Riding Center [at Rivers Bend] Inc. On February 11, 2020; Rivers learned after investigating the matter that Beck registered the Mercedes in her companies name using her Tax ID number, claimed that the vehicle was insured, paid for three years registration, purchased the vehicle from a dealer in Texas in 2018 and gave an incorrect address for the company as his own 5040 Cottontown Road, Forest VA 24551. Rivers reported the crime to local law enforcement in Bedford County. The Sheriff of Bedford County refused to investigate and charge the crime due to litigation Rivers had with Beck. A report was filed. The taxes on the vehicle remain unpaid on the

   vehicle in Rivers company name and a DMV stop has been threatened on Rivers Driver's License.

96. The Agencies, Departments and Employees of those Agencies and Departments named Defendant ordered, caused, aided, abetted, counseled, commanded, induced or assisted in the commission of Federal and criminal violations resulting from 18 U.S.C 2. Section 2(a) demands that a Defendant embrace a crime of another and consciously do something to contribute to its success. *See Rosemond v United States,* 134 S.Ct. 1240, 1245 (2014) quoting , *Central Bank of Denver, NA v First Interstate Bank of Denver, NA*

   *511 U.S. 164, 181 (1994)* "Those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime."

103.    The Defendants intentionally blocked, "flagged" other local law enforcement from charging and the City of Lynchburg and Albemarle, Bedford and Campbell County from prosecuting Wynne, RBC, 1650, SGLWT, thus allowing the other named Defendants in this case, to continue to commit crimes and illegal acts that injure Rivers, her businesses, other victims and the state of Virginia. They presented the keys to the Cities and Counties of the Commonwealth of Virginia to the subjects of their investigation allowing them to continue to operate the illegal enterprise, fraudulently conveying property and laundering Rivers funds obtained through fraud, in and out of the banks named Defendant in this matter.

106.    The USA is guilty of the same wrongful and fraudulent concealment that the other named Defendants are guilty of. The art of keeping the documents and the truth from the victim is a pattern of organized crime. As in this matter, "The only information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence." *Lutz v Chesapeake Appalachia LLC*, 717 F.3d 459 (6th Cir. 2013)..."[a] plaintiff's behavior need only be reasonable under the circumstances, and that reasonableness turns in part on how well the Defendant has hidden his wrongdoing]...."active concealment", whereby "the defendant has engaged in affirmative acts of concealment beyond the original fraud itself," ..."will be considered in determining the reasonableness of the behavior of the plaintiff under the circumstances." *Campbell,* 676 F.2d at 1127-28....[T]he upshot is that doing nothing

might be reasonable where nothing suggests to a reasonable person that wrongdoing is afoot  However, once wrongdoing is suspected, the plaintiff must be diligent, even if doing so might in hindsight be considered futile. *See e.g., Ruth v Unifund CCR Partners*, 604 F 3d 908, 913 (6th Cir. 1010)

The court could go on, but the point is made.   Defendants would be prejudiced—indeed, they already have been prejudiced—by being forced to spend "countless hours 'fishing' for the few relevant allegations" in Rivers' complaint, *Stanard*, 658 F.3d at 798.   "Federal judges have better things to do, and the substantial subsidy of litigation (court costs do not begin to cover the expense of the judiciary) should be targeted on those litigants who take the preliminary steps to assemble a comprehensible claim."   *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)   The allegations in the proposed third amended complaint do not "alert either the district judge or the defendants to the principal contested matters."   *Id.*

For these reasons, the court will deny Rivers' motion for leave to file a third amended complaint and dismiss this action with prejudice.   *See Metro. Regional Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 3d 538, 556 (D. Md. 2013) ("[L]eave to amend is properly denied and a claim dismissed with prejudice where further amendment would be futile, where the deficiencies in the complaint are fundamental, or where the party has failed to cure the deficiencies despite repeated opportunities.").[2]

## E.   Objections and Motion to Reconsider Dkt. No. 520 (Dkt. No. 521)

---

[2]  All of Rivers' claims in her Second Amended Complaint have been dismissed in the court's prior orders. The court did not enter final judgment at that time due only to the pendency of Rivers' motion for leave to file a Third Amended Complaint.   The court will now enter final judgment dismissing this case with prejudice.

Also, certain defendants have moved for the entry of final judgment.   (Dkt. No. 563.)   The court will deny this motion as moot.

Rivers moves to reconsider the court's 12/4/20 order enjoining further filings by Rivers, subject to certain exceptions.   (Dkt. Nos. 519, 520.)   Rivers asks the court to vacate the pre-filing injunction and several other orders of the court, but she offers scant justification or legal analysis aside from claiming that the court was in error or that she has been prejudiced.   The court will deny this motion without further discussion.

**F.   Objections to Dkt. No. 532, Motion to Set Aside or Vacate Dkt. No. 520 (Dkt. No. 537)**

In Docket Nos. 531 and 532, the court addressed Judge Hoppe's November 10, 2020 R&R (11/10/20 R&R) (Dkt. No. 497) and the objections thereto.   The court adopted the R&R, with the exception of correcting a clerical error, and granted several motions to dismiss in this matter.   (Dkt. No. 532.)   The caption of the motion mentions the court's pre-filing injunction, but Rivers offers no argument in that regard.

Rivers argues that the court mistakenly failed to deny the motion to dismiss filed by defendants Ralph Beck and Bboyz LLC.   Judge Hoppe recommended granting the motion to dismiss filed by these defendants on res judicata grounds.   (11/10/20 R&R 37–46, 62.)   Rivers objected on the grounds that she sued Bboyz LLC, not Bboys LLC, and she separately moved for default judgment on the grounds that the latter lacks standing to appear in this action.   The court rejected this argument.   "The court and the litigants fully understand who is appearing in this action and who has moved to dismiss: the company that used to be named B-Boys, LLC, but is now named B-Boyz, LLC."   (Dkt. No. 531 at 8–9.)   Rivers has not demonstrated that the court made a clear error of law in dismissing these defendants with prejudice on res judicata grounds.

Sprinkled throughout Rivers' brief are further objections to the dismissal of various other defendants.   Again, the court perceives no clear error of law.   Moreover, Rivers already had a chance to object to Judge Hoppe's R&R, which the court addressed.   At a certain point, the law

of the case must prevail, and it is time to move forward.   Rivers references newly-discovered evidence in relation to her proposed third amended complaint (Dkt. No. 537 at 6–9), but the court has denied leave to file that amendment, and the court is unclear how this evidence relates to Rivers' request for reconsideration.

For these reasons, the court will overrule the objections and deny the motion for reconsideration.

**G.   Motion for Clarification of Court's Order (Dkt. No. 532) and for Extension of Time to Leave to File and Supplement Third Amended Complaint (Dkt. No. 538)**

In this motion, Rivers explains that if the court grants the proposed third amended complaint, then the complaint will need to be supplemented again due to "additional newly discovered facts and circumstances."   (Dkt. No. 538 at 3.)   Rivers requests a time frame for such an amendment.   This motion is moot due to the court's denial of leave to amend.

**H.   Objections and Motion to Reconsider Dkt. Nos. 554 and 555 and Motion to Recuse (Dkt. No. 556)**

Rivers moves to reconsider the court's order which adopted Judge Hoppe's March 8, 2021 Report and Recommendation (3/8/21 R&R) that the court deny Rivers' various motions to amend her complaint without prejudice because Rivers did not submit proposed amendments for the court's consideration.   (Dkt. No. 554.)   The court observed that "Rivers filed a 27-page objection to a four page R&R."   (*Id.* at 2.)   Here, she has filed a 28-page objection to four page order.   (Dkt. No. 556.)   Rivers is reiterating and restating arguments that the court has addressed ad nauseum.   They deserve no further discussion.

Rivers also moves the court to recuse.   The basis for this motion is not entirely clear.   In one subheading, Rivers states that the court "must recuse based on failing to apply Common Laws, Accepting fraud on the Court and Adopting false statements relating to Bboys, Bboyz."

(*Id.* at 23.)   Rivers also argues that the court should recuse because it erred when it stated that Rivers did not object to Judge Hoppe's 11/10/20 R&R (Dkt. No. 497) as it "relates to Plaintiff's argument that judgment dismissing defendants and claims with prejudice based on res judicata in this matter is incorrect as a matter of law."   (*Id.* at 24.)   Incorrect rulings are no basis for a court to recuse.   *See* 28 U.S.C. § 455.   Rivers has the right to appeal and can raise any argument she likes about the court's rulings in that forum.   *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . [T]hey are proper grounds for appeal, not for recusal.").   There is no reason to question the court's impartiality in this matter, § 455(a), and the remaining circumstances for disqualification are not applicable.   *See, e.g.*, § 455(b)(1) (stating that a judge must disqualify if there is a personal bias or prejudice, or personal knowledge of disputed evidentiary facts).

The court will deny the motion to reconsider and to recuse.

### III.   CONCLUSION

The court will issue an appropriate order denying the motions discussed herein and a final judgment dismissing this matter with prejudice.

Entered: September 9, 2021.


/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge